---

### In re MARX et al.

(Supreme Court, Appellate Division, Second Department. June 9, 1905.)

PARTNERSHIP—ARTICLES—AGREEMENT OF EXTENSION—CONSTRUCTION.

> Partnership articles provided in one section that the partnership should continue until January 1, 1905, and for such further period as the parties should fix by their agreement in writing. Another section provided that the death of the partners before January 1, 1905, should not operate as a dissolution of the partnership, but that the same should continue, until the date specified, under the control and direction of certain persons. Subsequently the partners indorsed on the articles an agreement to extend the partnership period for the further term of one year, so that it should not expire until January 1, 1906. *Held*, that the agreement of extension continued the articles in force as a whole, including the stipulation for the prosecution of the business notwithstanding the death of the partners, until January 1, 1906.

Appeal from Surrogate's Court, Kings County.

Petition by William Marx and Mary Marx, Sr., for the removal of Margarethe Marx as executrix of the will of Frederick Marx, deceased. From a decree dismissing the petition, the petitioners appeal. Affirmed.

Argued before HIRSCHBERG, P. J., and BARTLETT, WOODWARD, JENKS, and MILLER, JJ.

R. D. Benedict, for appellants.
Albert W. Venino, for respondent.

JENKS, J. This appeal is from a decree of the surrogate of Kings county dismissing a petition for the removal of Margarethe Marx, sole executrix of Frederick Marx, deceased, and for the closing of the business of Marx & Rawolle on January 1, 1905. Marx & Rawolle became copartners in 1870, under articles which expired in 1900. In 1900 they executed articles providing for a continuance until 1905. The articles are long and specific. They contemplate the death of either or both partners during the term, and provide for a continuance in either event. Both parties died during that period. Therefore the section of the articles applicable is the fourteenth, which provides that:

"The death of both of the parties hereto before January 1, 1905, shall not operate as a dissolution of said copartnership, but the same shall be carried on until the 1st day of January, 1905, under the exclusive control and direction of George F. Henry, Henry Calder and such other person or persons as may be appointed by the legal representatives of the parties, but without other control or interference by the executors, administrators or legal representatives of either of the parties. The salary of said Henry Calder to be charged to general expense account of the business. The capital shall remain unimpaired, except what may be withdrawn by mutual consent of the legal representatives."

The article contains further provisions which permit either an agreement between the widows of the partners, or, if there be but one or none, between the legal representatives, as the case may be, for a continuance in the interest of either estate upon a purchase of the interest of the other, and which also sanction an agreement by the same parties for a termination of the business prior to January 1, 1905, and a winding up.

Upon June 1, 1903, Marx, as executrix of Frederick Marx, of the first part, and Rawolle and Buchanan, as executors of Frederick Rawolle, of the second part, reciting the fourteenth section, and stating that whereas by subsequent agreement it was provided that the said business should be continued to January 1, 1906, and also reciting that the parties have determined to continue the business as in said section, entered into an agreement to continue the business until January 1, 1906, with certain provisions within the said fourteenth section, and in furtherance of it. The sole ground of this application is that the agreement is for a continuance until 1906 instead of 1905. Criticism upon the executrix begins and ends with this alleged grievance. Neither her capacity nor her character, neither her administration nor her wisdom in making this agreement, is attacked. The "subsequent agreement" referred to in this challenged agreement, as providing that "the said business should be continued to January 1, 1906," was subsequently written at the foot of the articles of copartnership, and subscribed by the partners. It reads:

"New York, January 31, 1901.

"The undersigned have examined the partnership accounts of Marx and Rawolle and find the said accounts up to and including January 1st, 1901, to be in all respects correct, and they are hereby approved and declared adjusted accounts between them; and the foregoing agreement is hereby extended for the further term of one year, so that the same shall not expire until January 1st, 1906."

The contention of the learned counsel for the appellants is that this writing applied to the second section of the articles only, which provides:

"The said copartnership shall recommence on the first day of January, 1900, and shall continue for five (5) years until January 1st, 1905, and for such further period as the said parties may fix by their agreement in writing endorsed hereon."

The executrix construed this writing of extension to apply to the entire articles.  Her construction has been confirmed by the learned surrogate.  We think that he is right.  The definite period first determined by the partners in the articles expired on January 1, 1905.  The articles did not alone contemplate a continuance of the copartnership by the partners until that period, but the scheme expressly provided for a continuance of the business as the copartnership until then even if one or both should die meanwhile. The writing is not limited to any section of the articles.  Its terms are not restricted to a continuance by the parties themselves, in distinction to the continuance therein otherwise provided for.  The parties extend "the foregoing agreement," and this would naturally mean the entire articles, in all their provisions.  There is nothing to indicate that the parties intended to disturb the entire scheme by providing that the copartnership of the living should be continued until 1906, but that the continuance provided for by section 14 must terminate on January 1, 1905, and no reason is suggested for the variance.  If the parties intended thus to limit the extension, it is at least probable that they would have expressed such limitation.

Again, in October, 1901, the partners executed a modification of these articles which related exclusively to the conduct of the business after the death of one or both of the partners, which reads:

"The Agreement of Copartnership between the undersigned, dated May 19, 1900, *and extended on January 31, 1901*, is hereby modified and amended as follows."  (The italics are mine.)

This not only indicates that the copartners considered that the writing of January 31, 1901, applied to the entire agreement, but suggests the query that if such writing of January 31, 1901, referred only to a continuance by both partners, if living, why should the parties have thus referred to such extension in a modification relating only to the provisions for a continuance after the death of either or of both of the partners?  Further, the testator of this executor wrote in his will:

"A copartnership has existed for more than thirty years between myself and Frederick Rawolle under the firm name of Marx & Rawolle, which has lately been renewed for a further term, and in order that our partnership agreement and every modification thereof and any agreement relating thereto may have full force, I hereby direct my said executors in all respects to carry out the provisions of the said agreement so far as the same may be legally done."

This indicates that the testator thought that the agreement of January 31st affected the partnership agreement in toto, for there is none other, unless we consider the modification which I have referred to as within the descriptive term "any agreement."  Plainly

the testator did not intend to do this, inasmuch as he separately describes that by its apt term. To exclude the agreement of January 31st would be to exclude every "agreement," and hence to excise the expression "any agreement relating thereto." Again, if the only "agreement" (i. e., that of January 31st) only affected the partnership of the living partners, I am at a loss to understand why the testator should have impressed the fulfillment upon his executors of the provisions of said agreement "and any agreement relating thereto."

In the absence of any evidence to the contrary, we think that the writing of January 31, 1901, was a continuance of the entire partnership agreement until January 1, 1906, and hence an extension of the period contemplated by the fourteenth section until January 1, 1906. The general rule is that such a continuance applies to all the articles. Parsons on Partnership, § 165, and note; Dickinson v. Bold, 3 Dess. Eq. 501; Robertson v. Miller, 1 Brock. 466, Fed. Cas. No. 11,926, per Marshall, C. J.; Mechem's Elements of Partnership, § 79. Parsons, supra, cites Booth v. Parks, 1 Malloy, 466, when the Lord Chancellor said:

"We know that, after the expiration of the term as first agreed upon, partnerships frequently continue without a new agreement; and the effect of that is that, the partners after the expiration of the partnership term continuing to carry on the trade without a new deed, all the covenants are infused into the new series of transactions, with the single exception of the covenant of duration."

Parsons also cites Crawshay v. Collins, 15 Ves. Jr. 218, 228; Bradley v. Chamberlin, 16 Vt. 613; and Mifflin v. Smith, 17 Serg. & R. 165.

The decree should be affirmed, with costs. All concur.